## IN THE DISTRICT OF COLUMBIA SUPERIOR COURT

| | |
|---|---|
| STACIA HALL<br>3726 Connecticut Ave., NW<br>Apt. 109<br>Washington, DC 20008,<br><br>RALPH CHITTAMS<br>2936 M St., SE<br>Washington, DC 20019,<br><br>SUZZANNE KELLER<br>2331 Chester St., SE<br>Washington, DC 20020,<br><br>KEN MCCLENTON<br>1307 44th Pl., SE<br>Washington, DC 20019,<br><br>KIMBERLY EPPS<br>116 T St., NE<br>Apt. 344<br>Washington, DC 20002,<br><br>DICK A. HELLER<br>263 Kentucky Ave., SE<br>Washington, DC 20003,<br><br>NICOLLE S. A. LYON<br>5900 3rd St., NE<br>Washington, DC 20011.<br><br>   *Plaintiffs*<br>v.<br><br>DISTRICT OF COLUMBIA BOARD OF ELECTIONS<br>1015 Half St., SE<br>Suite 750<br>Washington, DC 20003<br><br>   *Defendant*. | Civil Action No. 2023-CAB-001544 |

1

**COMPLAINT**

The above-named Plaintiffs, STACIA HALL, RALPH CHITTAMS, SUZZANNE KELLER, KEN MCCLENTON, KIMBERLY EPPS, DICK A. HELLER, and NICOLLE S. A. LYON (collectively, "Plaintiffs"), by and through the undersigned counsel, bring this action against the District of Columbia Board of Elections ("Defendant"), and allege as follows:

**NATURE OF ACTION**

1. It follows from our national independence that United States citizens have a right to govern, and be governed by, themselves. The constitutional right to citizen self-government, moreover, has been recognized in repeated holdings of the Supreme Court of the United States. The fundamental right of citizens to vote has also been recognized, and protected against infringement, in multiple precedents of the Supreme Court.

2. Noncitizens do not have a fundamental right to vote in the United States. Nor does any noncitizen have a constitutional right to govern the United States.

3. In 2022, the D.C. Council passed D.C. Act 24-620, entitled the "Local Resident Voting Rights Amendment Act of 2022" (hereinafter the "D.C. Noncitizen Voting Act"). The D.C. Noncitizen Voting Act eliminates the prior citizenship requirement for voting in municipal elections, thus allowing noncitizens residing in D.C. to vote in those elections.

4. In combination with other laws, the D.C. Noncitizen Voting Act also permits noncitizen D.C. residents to be elected Mayor and to the D.C. Council, and to serve on the District of Columbia Board of Elections.

5. By necessary operation, the D.C. Noncitizen Voting Act dilutes the vote of every U.S. citizen voter in the District. Because it does so, the D.C. Noncitizen Voting Act is subject to review

under both the equal protection and the substantive due process components of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

6. Whatever governmental interest may be asserted to justify this law in such a review, that interest cannot stand against the right of American citizens to self-government, a right that the D.C. Noncitizen Voting Act infringes by its necessary operation.

7. In addition, because it dilutes the votes of all U.S. citizen voters in D.C., and also because it allows noncitizens to hold public office in D.C., the D.C. Noncitizen Voting Act violates the constitutional right of citizens to govern, and be governed by, themselves, and should be struck down on that basis.

8. Plaintiffs accordingly bring this action against Defendant, the District of Columbia Board of Elections, under the Constitution, including the Due Process Clause of the Fifth Amendment. Plaintiffs request that this Court enjoin Defendant from implementing and enforcing the D.C. Noncitizen Voting Act.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under § 11-921(a)(6) of the District of Columbia Official Code.

10. This Court has the power to issue permanent or preliminary injunctions. *Ifill v. District of Columbia*, 665 A.2d 185, 187-88 (D.C. 1995); D.C. Super. Ct. R. Civ. P. 65.

11. This Court is authorized to grant declaratory relief under Rule 57 of the District of Columbia Superior Court Rules of Civil Procedure.

12. Venue is proper in the District of Columbia because Defendant, as an agency of the government, operates in the District of Columbia, because Plaintiffs all live in the District of Columbia, and because the events giving rise to this Complaint took place in the District of Columbia.

**PARTIES**

13. Plaintiff Stacia Hall is a U.S. citizen and resident of the District of Columbia. Ms. Hall is a registered voter in the District of Columbia. In 2022, Ms. Hall was the Republican candidate for Mayor of the District of Columbia.

14. Plaintiff Ralph Chittams is a U.S. citizen and resident of the District of Columbia. Mr. Chittams is a registered voter in the District of Columbia. In 2018, Mr. Chittams was the Republican candidate for an at-large seat on the District of Columbia Council.

15. Plaintiff Suzzanne Keller is a U.S. citizen and resident of the District of Columbia. Ms. Keller is a registered voter in the District of Columbia.

16. Plaintiff Ken McClenton is a U.S. citizen and resident of the District of Columbia. Mr. McClenton is a registered voter in the District of Columbia.

17. Plaintiff Kimberly Epps is a U.S. citizen and resident of the District of Columbia. Ms. Epps is a registered voter in the District of Columbia.

18. Plaintiff Richard Heller is a U.S. citizen and resident of the District of Columbia. Mr. Heller is a registered voter in the District of Columbia.

19. Plaintiff Nicolle S. A. Lyon is a U.S. citizen and resident of the District of Columbia. Ms. Lyon is a registered voter in the District of Columbia.

20. Defendant, the District of Columbia Board of Elections, is responsible for administering elections in the District of Columbia.

**BACKGROUND**

21. The U.S. Constitution provides for a national capital city over which Congress has ultimate legislative authority. U.S. Const. art. I, § 8, cl. 17.[1]

---

[1] "To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become

22. In 1955, Congress enacted the D.C. Election Act "to regulate the election of delegates representing the District of Columbia in national political conventions." (hereinafter, the "D.C. Election Act") Pub. L. 84-376; 69 Stat. 699; title I, ch. 11, D.C. Code, 1951 ed. The D.C. Election Act defined a "qualified elector" in D.C. elections as "a citizen of the United States," *id*. Sec. 2(2), and provided that "no person shall vote in any election in the District unless he is a qualified elector[.]" *Id*. Sec. 7(a).

23. Congress amended the D.C. Election Act in 1961, rewriting the qualification requirement: "A person shall be entitled to vote in an election in the District of Columbia only if he is a qualified elector[.]" Pub. L. 87-389; 75 Stat. 817. The amendment did not change the definition of qualified elector, thereby preserving the citizenship requirement.

24. In 1973, Congress passed the District of Columbia Home Rule Act (hereinafter "D.C. Home Rule Act" or "Home Rule Act"). Pub. L. 93-198; 87 Stat. 774; D.C. Official Code § 1-201.01 *et seq* (1974).

25. The Home Rule Act provides:

> Subject to the retention by Congress of the ultimate legislative authority over the nation's capital granted by article I, § 8, of the Constitution, the intent of Congress is to delegate certain legislative powers to the government of the District of Columbia; authorize the election of certain local officials by the registered qualified electors in the District of Columbia; grant to the inhabitants of the District of Columbia the powers of local self-government; modernize, reorganize, and otherwise improve the governmental structure of the District of Columbia; and, to the greatest extent possible, consistent with the constitutional mandate, relieve Congress of the burden of legislating upon essentially local District matters.

---

the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful buildings."

D.C. Home Rule Act Sec. 102, D.C. Official Code § 1-201.02(a). Nothing in the Home Rule Act changed the definition of "qualified elector."

26. The D.C. Home Rule Act, however, did amend the D.C. Election Law, providing: "[n]otwithstanding any other provision of this Act or of any other law, the Council shall have authority to enact any act or resolution with respect to matters involving or relating to elections in the District." D.C. Home Rule Act Sec. 752, D.C. Official Code § 1-207.52.

27. On October 18, 2022, the D.C. Council passed the D.C. Noncitizen Voting Act (available online at https://lims.dccouncil.gov/Legislation/B24-0300). The D.C. Noncitizen Voting Act made amendments to the D.C. Election Law that enable noncitizens to vote in local elections and run for local office.

28. The D.C. Noncitizen Voting Act was transmitted to Mayor Bowser for signature on November 4, 2022, and was subsequently enacted, without her signature, on November 21, 2022.

29. The D.C. Home Rule Act requires that legislation passed by the Council be reviewed by Congress. D.C. Home Rule Act Sec. 602, D.C. Official Code § 1-206.02(10)(c). According to the Council's Legislative Information Management System ("LIMS"), the D.C. Noncitizen Voting Act was transmitted to Congress on January 10, 2023. *See* District of Columbia Legislative Information Management System, https://lims.dccouncil.gov/Legislation/B24-0300.

30. The House of Representatives passed a resolution disapproving of the D.C. Noncitizen Voting Act on February 9, 2023. *See* H.J. Res. 24, https://www.congress.gov/bill/118th-congress/house-joint-resolution/24/actions?s=3&r=3. The Senate failed to pass a resolution of disapproval within the time prescribed by the D.C. Home Rule Act.

31. LIMS reflects that the D.C. Noncitizen Voting Act went into effect on February 23, 2023. *See* https://lims.dccouncil.gov/Legislation/B24-0300.

32. The D.C. Noncitizen Voting Act amended the definition of "qualified elector":

> [A] person who (A) [i]s at least 17 years of age and who will be 18 years of age on or before the next general election; (B) [i]s a citizen of the United States; *except, that this subparagraph shall not apply in a local election*; (C) [h]as maintained residence in the District for at least 30 days preceding the next election and does not claim voting residence or right to vote in *any state, territory, or country*; and (D) [r]epealed; (E) [h]as not been found by a court of law to be legally incompetent to vote.

D.C. Official Code § 1-1001.02(2) (emphasis added to reflect changes made by the D.C. Noncitizen Voting Act).

33. The D.C. Noncitizen Voting Act was intended to include illegal immigrants. The Committee Report reflects that, when first introduced, only lawful permanent residents were considered in the new definition of qualified elector. Council of the District of Columbia, Committee on the Judiciary and Public Safety, Committee Report on B24-300, the "Local Resident Voting Rights Amendment Act of 2021," at 3, (Sep. 28, 2022), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://lims.dccouncil.gov/downloads/LIMS/47374/Committee_Report/B24-0300-Committee_Report1.pdf. The committee removed "arbitrary immigration statuses" from consideration in voter eligibility. *Id*.

34. A primary motive for removing "arbitrary immigration statuses" (that is, those found in federal immigration law) from consideration, and for allowing noncitizens to vote, was to aid those whom Council members called "immigrants"—meaning, generally, persons of foreign birth living in this country, irrespective of such statuses—as a class, by giving many more of them the power of the ballot box. Council of the District of Columbia, Committee on the Judiciary and Public Safety, Committee Mark-Up of B24-300, the "Local Resident Voting Rights Amendment Act of 2021," Statement of Council Member Allen, at 15:40, (Sep. 27, 2022), http://video.oct.dc.gov/VOD/DCC/2022_09/09_27_22_Judici.html ("Immigrants, whether

7

naturalized citizens, legal permanent residents, asylum seekers, DACA recipients, undocumented residents, or otherwise are valued members of our community. They are us. . . . Immigrants care deeply about issues affecting their communities and families like gun control, climate change, healthcare, affordable housing, quality schools, access to healthy food—issues that affect all residents and are directly influenced by our local government. Our noncitizen neighbors, many of whom have lived, worked, and raised a family in the District for decades deserve the opportunity to have a stake in their government and determine their own leaders just as we all do."); *id*. at 18:40 ("The Committee Print is a strong statement in support of the fundamental principle that all people should have a say in the government that makes decisions affecting their lives. It's in line with the District's commitment to making our local government more accessible to those who aren't traditionally represented rather than restricting it to those who already hold power."); Council of the District of Columbia, Committee on the Judiciary and Public Safety, Public Hearing on B24-300, the "Local Resident Voting Rights Amendment Act of 2021, at 7:25 (July 7, 2022) Statement of Council Member Nadeau, http://video.oct.dc.gov/VOD/DCC/2022_07/07_07_22 Judici.html ("Every day elected officials are making decisions about affordable housing, education, human services and more. People who've made their permanent homes in the District should have a hand in who represents them in government. The District has long been a place that has welcomed immigrants into our community and it's time to allow for their full participation in our institutions."); *id.* at 10:40, Statement of Council Member Lewis-George ("Voting and civic engagement is part of how we demonstrate our investment in advancing our city's collective interest and so we have a unique opportunity with this bill to engage our immigrant neighbors as valued voting members of our city."). This intentional expansion of the voting power of foreign-

born persons automatically decreases the voting power of D.C. residents, including all Plaintiffs, who were born in the United States.

35. The D.C. Noncitizen Voting Act added the term "local election" to the defined terms, providing:

> The term 'local election' means (A) an election for (i) Mayor; (ii) Chairman or member of the Council; (iii) Attorney General; (iv) Member of the State Board of Education; or (v) Advisory Neighborhood Commissioner; or (B) [a]n initiative, referendum, recall, or charter amendment measure on a District ballot.

D.C. Official Code § 1-1001.02(34).

36. The D.C. Election Law contains three other definitional terms related to voter eligibility and the eligibility to hold public office. It defines "duly registered voter" as "a registered voter who resides at the address listed on the Board's records." D.C. Official Code § 1-1001.02(19). It defines "registered qualified elector" as "a registered voter who resides at the address listed on the Board's records." D.C. Official Code § 1-1001.02(20). Finally, it defines "qualified registered elector" as "a registered voter who resides at the address listed on the Board's records." D.C. Official Code § 1-1001.02(21). A noncitizen voter fits all of these definitions.

37. The D.C. Council was established by the Home Rule Act. D.C. Home Rule Act Sec. 401, D.C. Official Code § 1-204.01(a). Members of the Council are "elected by the registered qualified electors of the District." *Id*. Among the required qualifications for a resident wishing to serve on the Council is that the person "[i]s a qualified elector." D.C. Official Code § 1-204.02. Because citizenship is not specifically enumerated as a qualification, a noncitizen is now a "qualified elector" for purposes of local elections, which include elections for D.C. Council, and therefore is eligible to serve on the Council.

38. The Office of the Mayor was established by the Home Rule Act. D.C. Home Rule Act Sec. 421, D.C. Official Code § 1-204.21(a). "[T]he Mayor shall be elected by the registered qualified electors of the District." *Id*. Among the required qualifications for a resident wishing to serve as Mayor, is that the person "[i]s a qualified elector." D.C. Official Code § 1-204.21(c)(1). Because citizenship is not specifically enumerated as a qualification for office, a noncitizen is now a "qualified elector" for purposes of local elections, which includes elections for Mayor, and therefore is eligible to serve as Mayor.

39. The D.C. Board of Elections was established by the Home Rule Act. D.C. Home Rule Act Sec. 491, D.C. Official Code § 1-1001.03(a). Board members are required to be "duly registered voter[s]." D.C. Official Code § 1-1001.04(a)(1). Because citizenship is not specifically enumerated as a qualification for office, a noncitizen is now a "duly registered voter" and is eligible to serve on the Board of Elections.

40. The D.C. Board of Elections is responsible for the implementation and enforcement of the D.C. Noncitizen Voting Act. Under D.C. law, the Board of Elections is required, among other things, "accurately [to] maintain . . . the official voter registration list for all elections in the District;" "actively locate, identify, and register qualified voters; conduct elections; provide for recording and counting votes;" "[p]ublish. . . the total number of qualified electors registered to vote;" "[o]perate polling places;" and "[c]ertify nominees and the results of elections[.]" D.C. Official Code §1-1001.05(a)(Perm.). The Board of Elections will be responsible for registering noncitizen voters and ensuring that they are not registered to vote in another city, state, or country.

41. Certain rights of U.S. citizens are considered fundamental despite not being explicitly enumerated in the Constitution. *See Ex parte Yarbrough*, 110 U.S. 651, 658 (1884) (explaining "the doctrine universally applied to all instruments of writing, that what is implied is as much a

part of the instrument as what is expressed. This principle, in its application to the Constitution of the United States, more than to almost any other writing, is a necessity, by reason of the inherent inability to put into words all derivative powers[.]").

42. Accordingly, "[t]he Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than absence of physical restraint. The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997) (citations omitted).

43. This substantive due process "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id*. (internal citations omitted).

44. Also required is "a careful description of the asserted fundamental liberty interest." *Id*. Such description can be found in "[o]ur Nation's history, legal traditions, and practices [which] provide[] the crucial guideposts for responsible decisionmaking, that direct and restrain our exposition of the Due Process Clause." *Id*. (internal citations omitted).

45. The right to vote has long been recognized among these fundamental liberty interests. As explained by the Supreme Court in *Reynolds v. Sims*, "[u]ndeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage as made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, and to have their votes counted." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

46. Infringement on the right to vote can be through "a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Id*. at 555.

47. Claims of vote dilution caused by expansions of the franchise, such as those made by residents of a city challenging the expansion of the franchise to nonresident property owners, have been analyzed under the Equal Protection Clause of the Fourteenth Amendment, on the ground that they discriminate against an identifiable group by harming that group while benefitting another. *See, e.g., Brown v. Bd. of Comm'rs*, 722 F. Supp.380, 398 (E.D. Tenn. 1989) (striking down an expansion of the franchise to nonresidents of a city under the Equal Protection Clause).

48. While the Fourteenth Amendment is only applicable to the states, U.S. citizens living in the District of Columbia are still entitled to the equal protection of the laws under the Fifth Amendment Due Process Clause, which provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.

49. "In *Bolling v. Sharpe*, 347 U.S. 497 (1954), the Court began in earnest to fold an 'equal protection' guarantee into the concept of 'due process.'" *United States v. Vaello-Madero*, 142 S. Ct. 1539, 1544 (2022) (Thomas, J., concurring). *See also Washington v. Davis*, 426 U.S. 229, 239 (1976) ("It is also true that the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups.") (citation omitted); *Adams v. Clinton*, 90 F. Supp. 2d 35, 100 (D.D.C. 2000), *aff'd per curiam*, 531 U.S. 941 (2000) ("The Supreme Court has held that the principles embodied in this clause apply equally to the federal government, for the benefit of persons residing in the District of Columbia, by virtue of the due process clause of the Fifth Amendment.").

50. Accordingly, equal protection analysis under the Fifth Amendment mirrors that applied to the states under the Fourteenth Amendment. *See, e.g., Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975) (explaining that "this Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment."); *Buckley v. Valeo*, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment").

51. Discrimination based on national origin is also prohibited under the Due Process Clause of the Fifth Amendment. *Hirabayashi v. United States*, 320 U.S. 81, 100 (1943) ("Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality."). When there is conflict between the rights of U.S. citizens and the rights of the government, "the rights of a citizen may not be subordinated merely because of his father's country of origin." *Oyama v. California*, 332 U.S. 633, 647 (1948). Intentionally, and on its face, the D.C. Noncitizen Voting Act dilutes the votes of U.S.-born residents by allowing noncitizens (none or virtually none of whom were born in the United States) to vote in the District of Columbia.

52. Because the D.C. Noncitizen Voting Act is facially discriminatory against identifiable classes, no inquiry into its legislative purpose is needed. *Azam v. D.C. Taxicab Comm'n*, 43 F. Supp. 3d 38, 49 (D.D.C. 2014) ("Where the government's action or policy is facially neutral, a plaintiff must plead and prove that the defendant acted with discriminatory purpose.").

53. The Supreme Court has repeatedly recognized the constitutional right of citizen self-government. "The exclusion of noncitizens from basic governmental processes is not a deficiency in the democratic system but a *necessary consequence* of the community's process of political self-definition." *Cabell v. Chavez-Salido*, 454 U.S. 432, 439-440 (1982) (emphasis added).

American citizens comprise the body politic of the United States. *See id.* ("Self-government, whether direct or through representatives, begins by defining the scope of the community of the governed and thus of the governors as well: Noncitizens are by definition outside of this community."); *Foley v. Connelie*, 435 U.S. 291, 295-96 (1978) ("The act of becoming a citizen is more than a ritual with no content beyond the fanfare of ceremony. A new citizen has become a member of a Nation, part of a people distinct from others. The individual, at that point, belongs to the polity and is entitled to participate in the processes of democratic decisionmaking. Accordingly, we have recognized a State's historical power to exclude noncitizens from participation in its democratic political institutions as part of the sovereign's *obligation* to preserve the basic conception of a political community.") (internal citation omitted) (emphasis added); *id.* at 296 ("[A] democratic society is ruled by its people. Thus, it is clear that a State may deny noncitizens the right to vote, or to run for elective office, for these lie at the heart of our political institutions."); *id.* (holding that such restrictions represent[] the choice, and *right*, of the people to be governed by their citizen peers.") (emphasis added); *id.* at 297 ("[A]lthough we extend to noncitizens the right to education and public welfare, along with the ability to earn a livelihood and engage in licensed professions, the right to govern is reserved to citizens.").

54. In review under the Fifth Amendment, no interest that may be asserted to justify the D.C. Noncitizen Voting Act can stand against the compelling governmental interest, recognized in these holdings, that U.S. citizens have in governing themselves.

## CAUSES OF ACTION

### I.     Violation of Substantive Due Process.

55. Plaintiffs re-allege and incorporate by reference the allegations set forth in all prior paragraphs of this Complaint.

56. Substantive due process under the Fifth Amendment to the Constitution prohibits the government from infringing on the fundamental rights of U.S. citizens.

57. Diluting the votes of U.S. citizens by enfranchising noncitizens infringes on Plaintiffs' fundamental right to vote.

58. Plaintiffs suffer a constitutional injury because of the direct and proximate actions of Defendant.

## II. Violation of the Equal Protection Component of the Fifth Amendment's Due Process Clause—Citizenship.

59. Plaintiffs re-allege and incorporate by reference the allegations set forth in all prior paragraphs of this Complaint.

60. The equal protection component of the Fifth Amendment's Due Process Clause prohibits the government from discriminating based on citizenship.

61. By enfranchising noncitizens in D.C. elections, and thus necessarily diluting the votes of U.S. citizens living in D.C., the D.C. Noncitizen Voting Act, on its face, unlawfully discriminates against U.S. citizens living in D.C., such as Plaintiffs, based on their citizenship.

62. Plaintiffs suffer a constitutional injury because of the direct and proximate actions of Defendants.

## III. Violation of the Equal Protection Component of the Fifth Amendment's Due Process Clause—National Origin.

63. Plaintiffs re-allege and incorporate by reference the allegations set forth in all prior paragraphs of this Complaint.

64. The equal protection component of the Fifth Amendment's Due Process Clause prohibits the government from discriminating based on national origin.

65. By enfranchising noncitizens in D.C. elections, the D.C. Noncitizen Voting Act, both intentionally and on its face, dilutes the votes of native-born U.S. citizens living in D.C., and thus unlawfully discriminates against native-born U.S. citizens living in D.C., such as Plaintiffs, based on their national origin.

66. Plaintiffs suffer a constitutional injury because of the direct and proximate actions of Defendants.

### IV.    Violation of the Right to Citizen Self-Government.

67. Plaintiffs re-allege and incorporate by reference the allegations set forth in all prior paragraphs of this Complaint.

68. Each and every American citizen, including Plaintiffs, has a constitutional "right . . . to be governed by [his or her] citizen peers." *Foley*, 435 U.S. at 296.

69. By enfranchising noncitizens, and also by allowing noncitizens to hold public office, the D.C. Noncitizen Voting Law allows noncitizens to govern citizens in D.C., and thus violates Plaintiffs' constitutional right to citizen self-government.

70. Plaintiffs suffer a constitutional injury because of the direct and proximate actions of Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

1. A declaratory judgment that the D.C. Noncitizen Voting Act violates Plaintiffs' rights under the Fifth Amendment to the U.S. Constitution and their constitutional right to citizen self-government;

2. A preliminary and permanent injunction prohibiting Defendant from spending funds to implement the D.C. Noncitizen Voting Act, from registering noncitizens to vote, and from counting votes cast by noncitizens;

3. A judgment awarding reasonable attorneys' fees, costs, disbursements, and other allowances of this proceeding; and

4. A judgment awarding Plaintiffs any other relief that this Court deems just, proper, and equitable.

Dated: March 14, 2023               Respectfully submitted,

                                     /s/ Christopher J. Hajec_____

                                    Christopher J. Hajec, D.C. Bar No. 492551
                                    Gina M. D'Andrea, D.C. Bar No. 1673459
                                    Immigration Reform Law Institute
                                    25 Massachusetts Ave NW, Suite 335
                                    Washington, DC 20001
                                    202.232.5590
                                    202.464.3590
                                    chajec@irli.org
                                    gdandrea@irli.org