## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STACIA HALL,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **No. 1:23-cv-01261-ABJ** |
| **DISTRICT OF COLUMBIA BOARD OF ELECTIONS,** | |
| **Defendant.** | |

### BRIEF OF THE LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW AND THE WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS AS *AMICI CURIAE* IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS

Jon M. Greenbaum, DC Bar No. 489887
Ezra Rosenberg, DC Bar No. 360927
Jennifer Nwachukwu, DC Bar No. 1644313*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, N.W., Suite 900
Washington, DC 20005
Phone: (202) 662-8300
Fax: (202) 783-0857
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jnwachukwu@lawyerscommittee.org
*Application pending to the United States District Court for the District of Columbia*

Kaitlin R. Banner, DC Bar No. 1000436
Jonathan Smith, DC Bar No. 396578
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN
AFFAIRS
700 14th Street, N.W., Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
kaitlin_banner@washlaw.org
jonathan_smith@washlaw.org

*Counsel for Amici Curiae*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………………..ii

CORPORATE DISCLOSURE STATEMENT……………………………………………..iv

INTERESTS OF *AMICI CURIAE* ……………………………………………………..1

INTRODUCTION……………………………………………………………………...2

ARGUMENT…………………………………………………………………………...3

     I.     Rational Basis Review is the Proper Standard of Review for Equal Protection Claims
          Regarding Expansion of the Franchise of Voting……………………………………..3

     II.    Application of Rational Basis Review Demonstrates That the Plaintiffs' Constitutional
          Claims Fail to State a Claim Upon Which Relief Can Be Granted……………………4

CONCLUSION…………………………………………………………………………7

CERTIFICATE OF COMPLIANCE…………………………………………………...8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Bd.of Comm'rs*,

    722 F. Supp. 380 (E.D. Tenn. 1989)……………………………………………………4

*Buckley v. Valeo*,

    424 U.S. 1 (1976)………………………………………………………………………3

*Cantwell v. Hudnut*,

    566 F.2d 30 (7th Cir.1977)……………………………………………………………..4

*Clark v. Town of Greenburgh*,

    436 F.2d 770 (2nd Cir.1971)......................................................................3,5,6

*Creel v. Freeman*,

    531 F.2d 286 (5th Cir. 1976)…………………………….…………………...4,5

*Duncan v. Coffee County, Tenn.*,

    69 F.3d 88 (6th Cir.1995)………………………………………………………4

*Ex Parte Poresky*,

    290 U.S. 30 (1933)………………………………………………………………..6

*Hogencamp v. Lee Cnty. Bd. of Ed.*,

    722 F.2d 720 (11th Cir. 1984)…………………………………………………4

*Levy v. Miami-Dade County*,

    254 F.Supp.2d 1269 (S.D. Fla. 2003)……………………………………………..3

*May v. Town of Mountain Village*,

    132 F.3d 576 (10th Cir. 1997)……………………………………………………3,5

*Phillips v. Andress*,

634 F.2d 947 (5th Cir. 1981)……………………………………………………………...3

*Snead v. City of Albuquerque,*

663 F.Supp. 1084 (D.N.M 1987)……………………………………………………....3

*Spahos v. Mayor and Councilmen of Savannah Beach,*

207 F.Supp. 688 (S.D.Ga. 1962)……………………………………………………4

*Sutton v. Escambia County Bd. of Education,*

809 F.2d 770 (11th Cir. 1987)………………………………………………………..3

*Yick Wo v. Hopkins,*

118 U.S. 356 (1886)…………………………………………………………............2

**Statutes and Regulations**

D.C. Code § 2-605…………………………………………………………………...6

D.C. Code § 4-205.03………………………………………………………………..6

D.C. Code § 38-309(b)………………………………………………………………6

D.C. Code § 47-1801.04(42)…………………………………………………………6

D.C. Code § 50-1401.03(a)(1)………………………………………………………6

D.C. Code § 50-1501.02(5)(a)………………………………………………………6

**Legislative Materials**

D.C. Law 24-242, 69 D.C. Reg. 14,601 (Dec. 2, 2022)……………………………………..2

**Other Authorities**

Martin Luther King, Jr., *Civil Right No. 1: The Right to Vote*, N.Y. TIMES MAG., Mar. 14, 1965, at 26-

27, *reprinted in* A TESTAMENT OF HOPE: THE ESSENTIAL WRITINGS AND SPEECHES

OF MARTIN LUTHER KING, JR. 183 (James M. Washington ed., 1991)………………………2

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Federal Rule of Appellate Procedure 29(a)(4) and Local Rule 7(o)(5), Amici Curiae the Lawyers' Committee for Civil Rights Under Law and the Washington Lawyers' Committee are 501(c)(3) nonprofit organizations that have no parent corporations in which any person or entity owns stock.

## INTERESTS OF *AMICI CURIAE*

Formed at the request of President John F. Kennedy in 1963, *Amicus* Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee") is a national organization that uses legal advocacy to achieve racial justice, fighting inside and outside the courts to ensure that Black people and other people of color have voice, opportunity, and power to make the promises of our democracy real. For the entirety of its history, the Lawyers' Committee has had an active voting rights practice and has fought to ensure that unjustified burdens are not imposed on the exercise of the franchise, and in particular to protect the right of Black people and other people of color to vote. Additionally, the Lawyers' Committee has participated as amicus curiae in numerous voting rights cases before the United States Supreme Court and other federal courts. Amicus Curiae has a direct interest in this case because it raises important voting rights issues central to the organization's mission.

The Washington Lawyers' Committee for Civil Rights and Urban Affairs works to create legal, economic and social equity through litigation, client and public education and public policy advocacy. The Committee recognizes the central role that current and historic race discrimination plays in sustaining inequity and recognizes the critical importance of identifying, exposing, combating and dismantling the systems that sustain racial oppression. A significant component of the Committee's work is advocating for District of Columbia residents and community partners experiencing discrimination in housing, education, work, and the criminal legal system. The Washington Committee has advocated for access to the franchise, including the removal of the ban on voting for persons who are incarcerated and to eliminate barriers to voting for persons with disabilities.  The Committee contends that expansion of the franchise to all noncitizens provides those residents with the opportunity to exercise their fundamental right to shape public policies

1

that affect their most significant needs, opportunities and quality of life.

Amici have requested and obtained the consent of all parties to file this Brief.[1]

## <u>INTRODUCTION</u>

A governing body's act to **<u>expand</u>** the franchise – unless accompanied by an unlawful discriminatory effect on a protected class or by an invidious intent – need be justified solely by a showing of a rational basis. This is how every court that has viewed similar governmental action has approached the issue. And this is how this Court should approach Defendant's motion to dismiss Plaintiffs' Complaint. The Local Resident Voting Rights Amendment Act of 2022, D.C. Law 24-242, 69 D.C. Reg. 14,601 (Dec. 2, 2022) ("the Act"), enacted by the Council of the District of Columbia is easily justified – on the face of the Complaint – as having a rational basis, and therefore violates neither the Equal Protection Clause of the Fifth Amendment nor the Due Process Clause of the Fourteenth Amendment.

That the rational basis standard – and not strict scrutiny - is applicable in this case does not mean that the right to vote is not fundamental. Indeed, the right to vote is "preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886).  As Dr. King said, voting rights are "Civil Right No. 1."[2]  There is no doubt but that the right to vote must be most fiercely safeguarded for those to whom it has been historically denied.  This, however, is not such a case. Rather, this is a case brought to **<u>stop</u>** the expansion of the franchise, and, indeed to prevent the franchise from being extended to a class of people that includes a disproportionately high number of people of color – precisely those to whom the right has been historically denied.

---

[1] Under Federal Rule of Appellate Procedure 29(a)(4)(E), the undersigned counsel certifies that no counsel for a party authored this Brief in whole or in part or made a monetary contribution intended to fund the preparation or submission of this brief.
[2] Martin Luther King, Jr., *Civil Right No. 1: The Right to Vote*, N.Y. TIMES MAG., Mar. 14, 1965, at 26-27, *reprinted in* A TESTAMENT OF HOPE: THE ESSENTIAL WRITINGS AND SPEECHES OF MARTIN LUTHER KING, JR. 183 (James M. Washington ed., 1991).

Nor is this a case of discrimination, as the Complaint alleges. That the franchise is being extended to non-citizens does not make citizens the victims of national origin discrimination any more than extending the franchise to younger citizens would make older citizens the victim of age discrimination. It simply places them on equal footing. Rational basis applies under such circumstances, because overinclusiveness does not raise anywhere near the constitutional concerns of underinclusiveness when it comes to voting. *Sutton v. Escambia County Bd. Of Education*, 809 F.2d 770, 775 (11th Cir. 1987), *reh'g denied*, 817 F.2d 761 (1987).

The rational basis test is typically met in cases of expansion of the franchise by a showing that the newly-enfranchised have a sufficient interest in the jurisdiction to justify their voting there. That standard is easily met here on the face of the Complaint.  As such, Plaintiffs' claims may be summarily dismissed.

## ARGUMENT

I.      **Rational Basis Review is the Proper Standard of Review for Equal Protection Claims Regarding Expansion of the Franchise of Voting**

Courts consistently apply rational basis review to claims of vote dilution under the Equal Protection Clause of the Fourteenth Amendment when such dilution is alleged to be a result of expanding the voting franchise.[3]  *See, e.g., Clark v. Town of Greenburgh*, 436 F.2d 770, 771–72 (2nd Cir.1971); *Phillips v. Andress*, 634 F.2d 947 (5th Cir. 1981).[4]   As the Sixth Circuit has explained:

---

[3] Review of claims of equal protection violations of the Fifth Amendment via its Due Process Clause is the same as under the Fourteenth Amendment, which is the constitutional basis for most claims on this issue. *Buckley v. Valeo*, 424 U.S. 1, 93 (1976).

[4] *See also Levy v. Miami-Dade County*, 254 F.Supp.2d 1269 (S.D. Fla. 2003), *aff'd*, 358 F.3d 1303 (11th Cir. 2004); *May v. Town of Mountain Village*, 132 F.3d 576 (10th Cir. 1997), *cert. denied*, 524 U.S. 938 (1998); *Sutton v. Escambia County Bd. of Education*, 809 F.2d 770, 775 (11th Cir. 1987), *reh'g denied*, 817 F.2d 761 (1987); *Snead v. City of Albuquerque*, 663 F.Supp. 1084, 1085–88 (D.N.M), *aff'd*, 841 F.2d 1131 (10th Cir.1987), *cert. denied*, 485 U.S. 1009, 108

3

Merely expanding the voter rolls is, standing alone, insufficient to make out a claim

of vote dilution. . . . To hold otherwise would have either of two effects. It would

make any expansion of the voting rolls subject to attack because the state did not

have a compelling state interest in warranting the change. This would leave the

scope of the franchise static and virtually unchangeable. The second alternative is

that courts, seeing the potential harm posed by the first, would subvert the

compelling state interest test, a critical facet of our constitutional jurisprudence, and

leave only the title, but not the substance. Therefore, we conclude that requiring a

compelling state interest to justify expanding the franchise is unworkable and

inappropriate for this case.

*Duncan*, *supra*, 69 F.3d at 94-95.

This reasoning applies with full force in this case.  The District's decision to grant

noncitizens the right to vote is not subject to strict scrutiny.  Rather, it is constitutional if the District

had a rational basis to make that grant.  As demonstrated in Point II, *infra*, application of the

appropriate test to the allegations in the Complaint renders Plaintiffs' claims legally insufficient.

## II.   Application of Rational Basis Review Demonstrates That the Plaintiffs' Constitutional Claims Fail to State a Claim Upon Which Relief Can Be Granted

Courts uniformly assess the rationality of the expansion of the franchise by examining the

sufficiency of the newly-enfranchised person's interest in the political subdivision in which they

---

S.Ct. 1475 (1988); *Hogencamp v. Lee Cnty. Bd. of Ed.*, 722 F.2d 720 (11th Cir. 1984); *Cantwell v. Hudnut*, 566 F.2d 30, 37–38 and n. 15 (7th Cir.1977), *cert. denied*, 439 U.S. 1114, (1979); *Creel v. Freeman*, 531 F.2d 286 (5th Cir. 1976), *cert. denied*, 429 U.S. 1066 (1977); *Spahos v. Mayor and Councilmen of Savannah Beach*, 207 F.Supp. 688 (S.D.Ga. 1962), *aff'd per curiam* 371 U.S. 206 (1962).  Indeed, even the case cited by Plaintiffs in their complaint in support of their dilution theory applies the rational basis standard. *See* Compl. at ¶ 12, citing *Brown v. Bd.of Comm'rs*, 722 F. Supp. 380 (E.D. Tenn. 1989).

4

are being enfranchised.  Thus, for example, the majority of cases cited in footnote 4, *supra*, involved expansion of the franchise to nonresident property owners and the courts analyzed whether the nonresidents' contributions to the political subdivisions' funding sources, length of time that nonresidents reside on the property, and use of programs funded by nonresidents constituted a sufficient interest in the operation of the political subdivision so as to rationally support the grant of the franchise to them. *See, e.g., May*, *supra* at 582-83 (analyzing property taxes and valuation of nonresident property owners who spent summer months on their property as evidence of sufficient interest); *Creel*, *supra* at 289 (analyzing educational programs and facilities used by nonresident students and partially funded by nonresident property taxes as evidence of sufficient interest).

The Second Circuit's decision in *Clark* is particularly instructive in this regard, as the court was ruling on an appeal from a grant of a motion to dismiss.  On the face of the Complaint, the Second Circuit ruled that the grant to village residents to vote in the Town of Greenburgh municipal elections was rational because their payment of tax – albeit at a lesser rate than Town residents – and their benefiting from facilities provided by the Town was a "sufficient interest in the Town government," 436 F. 2d at 772-73.

Here, on the face of the Complaint, the interest of non-citizens in the District of Columbia is even more substantial than those deemed sufficient to support a rational basis for enfranchisement in *Clark* and the other cases cited in footnote 4, *supra*. Unlike the newly-enfranchised in the other cases, here the newly-enfranchised already reside in the jurisdiction in which they are being granted the right to vote. Their sufficient interest in the jurisdiction is self-evident.

Indeed, Plaintiffs acknowledge as much in the Complaint, expressly conceding that a "primary motive" behind the Act was to give the right to vote to non-citizens, because they are "valued members of [the District of Columbia's] community" who are also directly impacted by a panoply of local government decisions ranging from gun control to education to fair housing. *See* Cmplt. at ¶ 34 (citing statements from D.C. councilmembers). Beyond that, Plaintiffs fail to allege any facts to contradict the sufficiency of the interest that noncitizens residing in D.C. have in the operations of the District. The allegations in the Complaint alone provide a sufficient basis for this Court to conclude that the constitutional issues raised by plaintiffs are "plainly insubstantial," *Ex Parte Poresky*, 290 U.S. 30, 32 (1933).

If more is needed, this Court may take judicial notice that noncitizens are also included as residents for purposes of payment of income taxes, participating in public benefits programs, attending D.C. public schools, registering a motor vehicle, and obtaining a driver's license, among other programs and activities permitted under D.C. law. *See* D.C. Code § 47-1801.04(42) (definition of "resident" in the D.C. tax code); D.C. Code § 4-205.03 (determination of residency for eligibility for public benefits programs); D.C. Code § 38-309(b) (documentation required to establish residency for D.C. public schools); D.C. Code § 50-1501.02(5)(A) (domicile requirement for registering a motor vehicle with the D.C. Department of Motor Vehicles); D.C. Code § 50-1401.03(a)(1) (residency requirement to obtain a driver's license or special identification card).[5]

On the face of the Complaint, District residents who are noncitizens have an interest in the District's operations as local DC residents – parents and caregivers, workers, business owners – significantly beyond the interests deemed sufficient to support the rationality of the expansion of the franchise in virtually all other cases.  The Complaint must be dismissed.

---

[5] *See also* D.C. Code § 2-605 ("All courts within the District of Columbia shall take judicial notice of the acts and resolutions published in the District of Columbia Statutes-at-Large.").

## **CONCLUSION**

Amici respectfully urges the Court to grant the Defendant's Motion to Dismiss.

Dated:  June 14, 2023                                    Respectfully Submitted,


/s/ Ezra D. Rosenberg _____
Ezra D. Rosenberg, DC Bar No. 360927
Jon. M. Greenbaum, DC Bar No. 489887
Jennifer Nwachukwu, DC Bar No.
1644313*
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, N.W., Suite 900
Phone: (202) 662-8300
Fax: (202) 783-0857
erosenberg@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
jnwachukwu@lawyerscommittee.org
*Application pending to the United States
District Court for the District of Columbia*

Kaitlin R. Banner, DC Bar No. 1000436
Jonathan Smith, DC Bar No. 396578
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
700 14th Street, N.W., Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
kaitlin_banner@washlaw.org
jonathan_smith@washlaw.org


*Counsel for Amici Curiae*

**<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that this brief complies with the requirements of Local Rule 7(o)(4) and

Fed.R.App.P. 29(a)(4) and 32(g)(1), as applicable because it is 25 pages or less and is in 12-point

font Times New Roman.


Dated: June 14, 2023                    /s/ Ezra D. Rosenberg_____
                                        Ezra D. Rosenberg, DC Bar No. 360927
                                        *Counsel for Amici Curiae*