# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STACIA HALL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-1261 (ABJ) |
| | ) | |
| DISTRICT OF COLUMBIA | ) | |
| BOARD OF ELECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs, seven U.S. citizens who reside in the District of Columbia,[1]  brought an action

on March 14, 2023 against the D.C. Board of Elections.  They allege that the Local Resident Voting

Rights Amendment Act of 2022 violates their Fifth Amendment guarantees of substantive due

process and equal protection, as well as "the constitutional right of citizen self-government."

Compl. [Dkt. # 1] ¶ 53.  On May 4, 2023, defendant removed the case under 28 U.S.C. §§ 1441(a)

and 1446 and Federal Rule of Civil Procedure 81(c).  *See* Def.'s Notice of Removal [Dkt. # 1] at 1.

Defendant has moved to dismiss the complaint for lack of subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1), arguing that plaintiffs lack standing, and it also seeks to

dismiss the complaint for failure to state a claim under Rule 12(b)(6).  *See* Def.'s Mot. to Dismiss

---

1       Plaintiff Stacia Hall is a U.S. citizen and D.C. resident registered to vote.  Compl. ¶ 13.  In 2022, she was the Republican candidate for Mayor in the District.  Compl. ¶ 13.

Plaintiff Ralph Chittams is a U.S. citizen and D.C. resident registered to vote.  Compl. ¶ 14.  In 2018, he was the Republican candidate for an at-large seat on the District's Council.  Compl. ¶ 14.

Plaintiffs Suzzanne Keller, Ken McClenton, Kimberly Epps, Richard Heller, and Nicolle S. A. Lyon are U.S. citizens and D.C. residents registered to vote.  Compl. ¶¶ 15–19.

[Dkt. # 8] ("Mot."). Plaintiffs oppose the motion, and the matter is fully briefed. *See* Pls.' Opp. to Mot. [Dkt. # 12] ("Opp."); Def.'s Reply Brief [Dkt. # 15] ("Reply"); Pls.' Notice of Suppl. Authority [Dkt. # 16] ("Pl.'s Suppl."); Decl. of Plaintiff Stacia Hall [Dkt. # 17] ("Hall Decl."); Def.'s Resp. to Pls.' Suppl. [Dkt. # 18].[2]

Because plaintiffs lack standing, the Court will grant defendant's motion to dismiss under Rule 12(b)(1).

## BACKGROUND

In 2022, the Council of the District of Columbia passed the "Local Resident Voting Rights Amendment Act of 2022" ("the Act"). Compl. ¶ 3; D.C. Law 24-242, 69 D.C. Reg. 14,601 (Dec. 2, 2022). The Act removed the prior citizenship requirement for voting in municipal elections, thereby enabling noncitizen residents of the District to vote in local – but not federal – elections. Compl. ¶¶ 3, 33–34. Under the Act, noncitizen residents may vote in elections for D.C. government positions, such as mayor, as well as local initiatives, referenda, recalls, or charter amendment measures, so long as they satisfy other D.C. voting requirements. D.C. Law 24-242 § 2(a)(2). The Act also permits noncitizen residents to run for D.C. government positions and to serve on the District's Board of Elections. Compl. ¶ 4.

The gravamen of plaintiffs' complaint is that this enfranchisement of noncitizens "dilutes the vote of every U.S. citizen voter in the District." Compl. ¶ 5. Based on that premise, plaintiffs allege that the Act: (1) infringes on their fundamental right to vote in violation of the Fifth Amendment guarantee of substantive due process; (2) discriminates against U.S. citizens living in

---

2    The Court also received an amicus brief in support of defendant's motion to dismiss from the Lawyers' Committee for Civil Rights Under Law and the Washington Lawyers' Committee for Civil Rights and Urban Affairs. *See* Brief of Amici Curiae [Dkt. # 11].

D.C. based on their citizenship in violation of the Fifth Amendment guarantee of equal protection; (3) discriminates against native-born U.S. citizens living in D.C. based on their national origin, also in violation of the equal protection clause; and (4) violates the "constitutional right to citizen self-government."  Compl. ¶¶ 55–70.  Plaintiffs seek declaratory and injunctive relief to prohibit defendant from implementing the Act, registering noncitizens to vote, and counting votes cast by noncitizens.  Compl. at 16–17.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) (citation omitted) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).  Moreover, a federal court must determine whether it has jurisdiction to hear a case before it may consider whether plaintiffs have stated a cognizable claim.  *Hancock v. Urban Outfitters*, 830 F.3d 511, 513 (D.C. Cir. 2016) ("Federal courts cannot address the merits of a case until jurisdiction – the power to decide – is established.").

"To state a case or controversy under Article III, a plaintiff must establish standing."  *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Standing is a necessary predicate to any exercise of federal jurisdiction; if it is lacking, then the dispute is not a proper case or controversy under the

3

Constitution, and federal courts have no subject matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012). Plaintiffs must show standing for each claim they assert, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 185 (2000), and the party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561.

To establish constitutional standing, a plaintiff must show: (1) that he or she has suffered "injury-in-fact"; (2) that the injury is "fairly traceable" to the challenged action of the defendant; and (3) that it is "likely, as opposed to merely speculative," that a favorable decision will redress the injury. *Lujan,* 504 U.S. at 560–61; *see also Laidlaw Env't. Servs.*, 528 U.S. at 180-81.

To satisfy the first requirement, plaintiffs must demonstrate that they "suffered an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), quoting *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). To be "concrete," the injury "must actually exist," meaning that it is real and not abstract, although concreteness is "not . . . necessarily synonymous with 'tangible.'" *Spokeo*, 578 U.S. at 339–42. And to be "particularized," the injury must affect a plaintiff "in a personal and individual way." *Id.* at 339. Of significance to this case, a "plaintiff raising only a generally available grievance about [the] government – claiming only harm to his and every citizen's interest in [the] proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74; *see also Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987) (observing that an injury-in-fact requires "more than allegations of damage to an interest in 'seeing' the law obeyed or a social goal furthered").

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005).  Nevertheless, the Court need not accept inferences drawn by plaintiffs if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions.  *Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  Moreover, when considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the Court "is not limited to the allegations of the complaint."  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

Plaintiffs maintain that the alleged dilution of their votes as U.S. citizens satisfies the requirement of the particularized injury-in-fact that gives them standing to invoke the Court's jurisdiction.  Opp. at 3.

The Supreme Court has "long recognized that a person's right to vote is 'individual and personal in nature,'" *Gill v. Whitford*, 585 U.S. 48, 49 (2018), citing *Reynolds v. Sims*, 377 U.S.

533, 561 (1964), and that "voters who allege facts showing disadvantage to themselves as individuals have standing to sue." *Baker v. Carr*, 369 U.S. 186, 206, 208 (1962) (holding that qualified voters of various Tennessee counties had standing to challenge an allegedly unconstitutional statewide apportionment scheme because they had "a plain, direct and adequate interest in maintaining the effectiveness of their votes") (internal citations omitted). For example, in the context of malapportionment, voter dilution can support standing when a classification "places [voters] in a position of constitutionally unjustifiable inequality vis-a -vis voters in irrationally favored counties." *Id.* at 207-208.

The Supreme Court has also found the necessary disadvantage to be present when the vote of one member of a group receives less weight than that of another member of the same group based on an arbitrary distinction in the gerrymandering context. *See, e.g.*, *Rucho v. Common Cause*, 139 S. Ct. 2484, 2492 (2019) (noting that partisan gerrymandering could cause an injury in fact because plaintiffs lived in a district that had been either "cracked" or "packed" to lessen the weight of their votes);[3] *contra United States v. Hays*, 515 U.S. 737, 739 744–745 (1995) (holding that plaintiffs failed to produce evidence that they had suffered individualized harm in the racial gerrymandering context when their claims focused on a "majority-minority" district, that is, a district "in which a majority of the population is a member of a specific minority group," but they did not live in that district).

---

3    A "cracked" district is one in which "a party's supporters are divided among multiple districts, so that they fall short of a majority in each," while a "packed" district is one in which "a party's supporters are highly concentrated, so they win that district by a large margin, 'wasting' many votes that would improve their chances in others." *Rucho*, 139 S. Ct. at 2492 (internal citations omitted).

The Supreme Court has also recognized that malapportionment based on a flawed census could give rise to a cognizable injury.  *See Reynolds*, 377 U.S. at 555, 563 (holding that Alabama residents and voters had standing to challenge a state reapportionment plan that gave the same number of representatives to unequal numbers of constituents and noting that "[w]eighting the votes of citizens differently, by any method or means, merely because of where they happen to reside, hardly seems justifiable."); *Dep't of Com. v. U.S. House of Representatives*, 525 U.S. 316, 331–32 (1999) (plaintiffs satisfied the injury-in-fact requirement for standing when they demonstrated that it was a "virtual certainty" that Indiana would lose a House seat under the proposed census plan because Indiana residents' votes would be diluted by the loss).

But not every alleged dilution of voting rights gives rise to an injury that would support a finding of standing.  In *Gill,* Wisconsin residents complained that partisan gerrymandering left them with "a less valuable vote."  585 U.S. at 77 (Kagan, J., concurring). The Court held that the plaintiffs had not come forward with any evidence to show that they had suffered such an injury; the only plaintiff to testify at trial about the alleged gerrymander's effects "expressly acknowledged that his district would be materially identical under any conceivable map," meaning he was not "among the injured."  *Id*.  As the D.C. Circuit explained in *Daughtrey v. Carter*, 584 F.2d 1050, 1056 (D.C. Cir. 1978), in each case, "the determination of injury must necessarily proceed on an Ad hoc scrutiny of the facts."  (internal citations and quotations omitted).

Plaintiffs' complaint, which is more of a memorandum of points and authorities than the required "short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. Proc. 8(a)(2), is thin on facts.  It posits that "by necessary operation," the Act authorizing noncitizens to vote in local elections dilutes the votes of the citizens who reside in the district. Compl.  ¶ 5.  But this *ipse dixit* is insufficient to invoke the Court's jurisdiction.

The complaint recites inarguable, important principles – "all qualified voters have a constitutionally protected right to vote, and to have their votes counted," Compl. ¶ 45, and "the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups," Compl. ¶ 49 – but it does not include facts showing that *plaintiffs'* right to vote has been denied, that they have been subjected to discrimination or inequitable treatment or denied opportunities when compared to another group, or that their rights as citizens have been "subordinated merely because of [their] father's country of origin." *See* Compl. ¶ 51. They identify nothing that has been taken away or diminished and no right that has been made subordinate to anyone else's.

In sum, plaintiffs have not alleged that they have personally been subjected to any sort of disadvantage as individual voters by virtue of the fact that noncitizens are permitted to vote, too. They may object as a matter of policy to the fact that immigrants get to vote at all, but their votes will not receive less weight or be treated differently than noncitizens' votes; they are not losing representation in any legislative body; nor have citizens as a group been discriminatorily

gerrymandered, "packed," or "cracked" to divide, concentrate, or devalue their votes. At bottom, they are simply raising a generalized grievance which is insufficient to confer standing.[4]

Indeed, the D.C. Circuit has already specifically rejected the contention that the mere expansion of the electorate as a whole gives rise to the necessary particularized injury affecting an existing voter in a personalized and individual way. *See Daughtrey*, 584 F.2d at 1056-57.

In *Daughtrey,* a group consisting of retired and active duty military officers, a civilian former prisoner of war, the minor child of a prisoner of war who died in captivity, and some of

---

[4]   On March 4, 2024, plaintiffs filed a supplemental notice of authority transmitting an opinion issued by the New York State Court of Appeals. *See* Pl.'s Suppl. In *Fossella v. Adams*, No. 2022-05794, slip. op. (N.Y. App. Div. Feb. 21, 2024), the court concluded that the voter plaintiffs lacked standing for reasons similar to those outlined in this opinion. *Id.* at 8. However, it did find that officeholders had standing to challenge New York City's noncitizen voting law. *Id.* at 11. Given that development, plaintiffs submitted a declaration from plaintiff Hall in a belated effort to base standing on her more recent status as a candidate for the at-large position on the District of Columbia Board of Education. *See* Pl.'s Suppl; Hall Decl. ¶ 8.

The D.C. Circuit has made it clear that "standing is assessed as of the time a suit commences." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009). The complaint, which was filed in May 2023, simply alleges that "in 2022, Ms. Hall was the Republican candidate for Mayor of the District of Columbia," and it made no reference to any current or impending candidacy. Compl. ¶ 13. In her recently filed declaration, plaintiff Hall states: "*At the time this lawsuit was filed*, I was *planning* to run for public office in the District in 2024, and was being pressed by other members of the District of Columbia Republican Party to run for the at-large seat on the District of Columbia Council in the 2024 election." Decl. ¶ 7 (emphasis added). She asserts that she finalized her plans "[i]n the summer of 2023," and she is now "currently a candidate." Decl. ¶¶ 8-9.

Even if this out-of-circuit opinion were binding on this Court, the case at hand presents an entirely different set of circumstances. While the court in *Fossella* held that the officeholder plaintiffs had standing because "the record reflects that each of the officeholder plaintiffs *intended* to seek reelection," *Fossella*, slip. op. at 12, plaintiff Hall was not an *officeholder* seeking *re*election; at the time of the complaint, she was *intending* to be a *candidate*. While the court stated that "[a]n inaccurate vote tally is a concrete and particularized injury to candidates," *id.* at 11, Hall was not yet a candidate at the time the lawsuit commenced. Moreover, given that the relevant plaintiffs in *Fossella* were "individuals who held or had recently been elected to public office," *id.* at 3, and not merely "candidates," any dicta regarding standing with respect to candidates has no bearing on the instant case.

their spouses alleged that their votes were unconstitutionally devalued when individuals who had left the country to avoid military service during the Vietnam War were permitted to return, with their voting rights restored. *Id.* at 1054. They challenged then-President Carter's Proclamation and Executive Order on the grounds that as eligible voters, their voting rights would be diluted by the reentry of persons they alleged should remain excluded. *Id.* The Court of Appeals observed that the appellants did "not contend that their votes [were] diluted in any particular election or in any particular geographical area" or that they were an "identifiable group of voters whose votes are disfavored Vis-a-vis those of some other group." *Id.* at 1056. It added that "at best," the complaint could be read to claim that as qualified voters, plaintiffs' votes were being diluted "as a result of the reentry into the United States of an admittedly unknown, relatively small number of persons who allegedly should be excluded, and who therefore should not be entitled to vote." *Id.* Because this did not present a "discrete factual context" within which a "concrete injury" had occurred, the court affirmed the district court's dismissal of the complaint for lack of standing. *Id.*[5]

Plaintiffs point to a general statement contained in an out-of-circuit case to argue that the existence of "a point of comparison" means that they have standing. *See* Opp. at 6-7, citing *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (upholding the dismissal of an individual

---

[5]    The Court also concluded that "the dilution of voting rights [appellants] have alleged is so diffuse, minute, and indeterminable that we must conclude the injury asserted is too speculative to support standing under the circumstances presented here." *Daughtrey*, 584 F.2d at 1056 (internal quotations omitted). While plaintiffs here have pointed to a more geographically concentrated impact than the nationwide action challenged in *Daughtery,* they have made no effort to quantify the number of noncitizens who will meet the criteria to vote in local elections, much less, do so. But the Court's ruling here is based on the lack of a particularized injury recognized in *Daughtery* as opposed to the Circuit's concern about the diffuse or speculative nature of the injury alleged in that case.

voter's challenge to the 2020 presidential election results in Georgia for lack of standing, and noting that "vote dilution can be a basis for standing. . . [b]ut it requires a point of comparison."). They maintain that the "point" at which the strength of their votes was diminished was the date when the statute was enacted.  Opp. at 6.  But they have lifted the term out of context, as the Eleventh Circuit was not talking about a point in time, and it went on to identify examples of the particular forms of vote dilution that could cause a cognizable injury: "For example, in the racial gerrymandering and malapportionment contexts, vote dilution occurs when voters are harmed compared to 'irrationally favored' voters from other districts."  981 F. 3d at 1314, citing *Baker v. Carr,* 369 U.S. at 207-08.  Here, the power of plaintiffs' individual votes was not diminished in any way on that date: plaintiffs' votes will be counted and weighted exactly as they were before.[6]

## CONCLUSION

Because plaintiffs have failed to establish the injury-in-fact element of standing, the Court will **GRANT** defendant's motion to dismiss [Dkt. # 8] for lack of subject matter jurisdiction.

---

[6]     Plaintiffs also cite *Michel v. Anderson*, 14 F.3d 623 (D.C. Cir. 1994), Opp. at 5, but this case presents an entirely different set of circumstances.  In *Michel*, members of Congress and their constituents challenged a House rule allowing delegates from D.C. and U.S. territories to vote in the House Committee of the Whole.  *Id.* at 624–25.  The court considered a standing challenge raised by *amici* given the jurisdictional nature of the issue.  *Id.* at 625.  Notably, the *amici* did "not question the congressmen's standing to assert that their voting power has been diluted."  *Id.*  Given that the applicability of the vote dilution theory was conceded, the court only needed to decide whether the private voters had standing as well.  The *amici* argued that the constituents had merely asserted a "derivative" injury and that the dilution of the voting power of their congressmen was a generalized grievance suffered by every American voter.  *Id.* at 626.  The *Michel* court held that the fact that all voters in the 50 states suffered the injury did not render it "abstract," and that the private citizens faced the same injury as the representatives: "previously they had a right to elect a representative who cast one of 435 votes, whereas now their vote elects a representative whose vote is worth only one in 440."  *Id.*  The opinion went on to observe:  "[t]hat an injury is widespread . . . does not mean it cannot form the basis for a case in federal court so long as each person can be said to have suffered a distinct and concrete harm."  *Id.*  Here, the ruling that plaintiffs lack standing is based on the absence of a particularized injury suffered by *any* of the U.S. citizen plaintiffs, not the fact that there may be a large number of other citizens residing in the District.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 20, 2024